# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

NICOLAS FELIX,

 *Petitioner*,

vs.

E.K. MCDANIEL, *et al.*,

 *Respondents.*

3:09-cv-00483-LRH-WGC

ORDER

This habeas matter under 28 U.S.C. § 2254 comes before the Court on the respondents' motion (#39) to dismiss. Respondents seek dismissal of the petition, as amended, on, *inter alia,* the basis that the petition is time-barred under the federal one-year limitation period in 28 U.S.C. § 2244(d)(1).

*Background*

Petitioner Nicolas Felix challenges his Nevada state court conviction, pursuant to a guilty plea, of first-degree murder.

The judgment of conviction was filed on February 9, 2006. No direct appeal was taken, and the time for doing so expired on Monday, March 13, 2006.[1]

After 314 days had elapsed, on or about January 21, 2007, petitioner mailed a *pro se* state post-

---

[1] #32, Ex. 100. Both counsel posit that the appeal time instead expired on March 11, 2006. That date was a Saturday. As the Court noted recently in another case, counsel may find it helpful to consult the calendar for past years throughout when calculating the running of the federal limitation period. When the running of the limitation period is keyed to the expiration of, *e.g.,* direct appeal or *certiorari* times, it is the *expiration of the deadline under the applicable rules*, not merely the counting of a set number of days in a vacuum, that is critical.

conviction petition to the state district court for filing. The state district court denied relief. Petitioner then retained counsel to pursue the state post-conviction appeal. The state supreme court affirmed the denial of post-conviction relief on February 3, 2009. The remittitur issued on March 3, 2009.[2]

According to a letter to petitioner dated April 1, 2009, his retained state post-conviction counsel, Donald Green, advised petitioner of the adverse state supreme court decision by a letter mailed on February 9, 2009. Counsel thereafter spoke with petitioner twice about the case and also with his parents on another occasion. It did not appear as of April 1, 2009, that the parents would be providing further funding for continued representation beyond the state post-conviction appeal.[3]

Counsel provided petitioner a Section 2254 federal habeas form, and he indicated that he did not believe that petitioner would obtain the relief that he sought in the Nevada state courts. Green cautioned petitioner against filing any papers without the assistance of an attorney. He stated further, however, that "if you have to file your own papers, please follow all instructions provided to you by the court in which you file your papers." Counsel further informed petitioner that if he filed papers in federal court on his own, he would be required to submit additional papers, which he could obtain from the federal court clerk at the address stated in the letter.[4]

Counsel further stated, erroneously, that "you have one year until February 2, 2010, within which to file" a federal petiton.[5]

After 169 days had elapsed following the March 3, 2009, issuance of the remittitur, on or about August 20, 2009, petitioner mailed a *pro se* federal habeas petition to the Clerk of this Court for filing.[6]

////

---

[2] #32, Ex. 101, at electronic docketing page 11 (certificate of mailing); *id.*, Exhs. 115 & 117. The Court recently reaffirmed that it is the date of mailing rather than the date of filing that is controlling for purposes of tolling the federal limitation period as opposed to tolling the Nevada state limitations period. *See Alvin Rankin, Jr. v. Jack Palmer*, 3:09-cv-00145-LRH-VPC, #38, at 4 (Dec. 27, 2011).

[3] #32. Ex. 118, at unnumbered pages 1-2.

[4] *Id.,* at unnumbered pages 2-3.

[5] *Id.*, at unnumbered page 3, ¶ 11.

[6] #1-1.

*Governing Law*

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), in the context presented here, a federal habeas petition must be filed within one year after "the date on which the judgment [of conviction] became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Under § 2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

Equitable tolling is appropriate only if the petitioner can show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, ___ U.S.___, ___, 130 S.Ct. 2549, 1085, 177 L.Ed.2d 130 (2009) (quoting prior authority). Equitable tolling is "unavailable in most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999), and "the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir.2002)(*quoting United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.2000)). The petitioner ultimately has the burden of proof on this "extraordinary exclusion." 292 F.3d at 1065. He accordingly must demonstrate a causal relationship between the extraordinary circumstance and the lateness of his filing. *E.g., Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). *Accord Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007).

*Discussion*

**Calculation of the Federal Limitation Period**

Under § 2244(d)(1)(A), the federal limitation period began running after the expiration of the time for filing a direct appeal on Monday, March 13, 2006. Under § 2244(d)(2), the limitation period stopped running on or about January 21, 2007, the date that petitioner mailed his *pro se* state petition to the state district court clerk for filing.[7]

---

[7] See notes 1 & 2, *supra*, regarding specific dates. *See also Day v. McDonough*, 547 U.S. 198, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006)(discretion to *sua sponte* correct errors in the parties' calculation of the limitation period).

Absent delayed accrual or other tolling, a total of 314 untolled days elapsed between March 13, 2006, and January 21, 2007.

The federal limitation period began running again – once more absent delayed accrual or other tolling – after the issuance of the remittitur on the state post-conviction appeal on March 3, 2009.

Accordingly, absent delayed accrual or other tolling, the federal limitation period expired after another 51 days had elapsed, on Thursday, April 23, 2009.

The federal petition was not mailed for filing until nearly four months later, on or about August 20, 2009.

Absent delayed accrual or other tolling, the federal petition thus was not filed timely.

***Correct Order for Analyzing Equitable Tolling and Delayed Accrual Issues***

Petitioner raises equitable tolling arguments as well as what he refers to as a "statutory tolling" argument under § 2244(d)(1)(B). The correct order of analysis for the Court is to address any equitable tolling issues prior to addressing any "statutory tolling" – in truth, delayed accrual -- issues under 28 U.S.C. § 2244(d)(1)(B). This section provides that "[t]he limitation period shall run from . . . the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the application was prevented from filing by such State action." Established Ninth Circuit law distinguishes between statutory tolling under § 2244(d)(2) and delayed accrual under § 2244(d)(1)(B) in this regard. In a case involving possible statutory tolling under § 2244(d)(2) – based upon the pendency of state post-conviction proceedings -- the district court first must determine whether statutory tolling under § 2244(d)(2) applies before considering equitable tolling. *See, e.g., Jorss v. Gomez*, 311 F.3d 1189, 1192-93 (9th Cir. 2002). In contrast, in a case where delayed accrual is sought under § 2244(d)(1)(B) – based upon an alleged State-created impediment in violation of the Constitution -- the Ninth Circuit requires that the court decide equitable tolling *prior to* the § 2244(d)(1)(B) issue. *See, e.g., Lott v. Mueller*, 304 F.3d 918, 925 (9th Cir. 2002). Because § 2244(d)(1)(B) necessarily involves a constitutional decision, *Lott* requires that the court must resolve any parallel equitable tolling issues first, so as to avoid, if possible, a potentially unnecessary decision on a constitutional issue. The Court accordingly will address equitable tolling prior to any consideration of delayed accrual under § 2244(d)(1)(B).

-4-

*Equitable Tolling*

Petitioner contends that he is entitled to equitable tolling because: (a) he was proceeding *pro se* except during the represented state post-conviction appeal; (b) he allegedly lacks English-language skills, with Spanish being his native language; (c) legal resources at Ely State Prison are available only through a "paging" system without direct assistance by law clerks, including in particular Spanish speaking law clerks; (d) his age and "lack of formal education" rendered him unable to effectively access such a paging system without assistance; and (e) his retained state post-conviction appeal counsel erroneously advised him that he had a full year from the issuance of the remittitur on the state post-conviction appeal to file a federal petition.[8]

At the outset, in a point that the Court will come back to repeatedly herein, very little of the bald and generalized factual assertions made in the opposition are supported by actual competent evidence in the record in this matter establishing an extraordinary circumstance standing in the way of a timely filing during the time periods relevant to this case. Petitioner has the burden of establishing a basis for equitable tolling. *Miranda*, *supra*. To do that, petitioner must present competent evidence of specific facts with the opposition to the respondents' motion to dismiss. Broad generalized statements by counsel in an opposition memorandum – unilaterally presented as a proffer instead of affidavits and other supporting evidence – have no evidentiary value. In all events, the unsupported assertions presented -- even if accepted at face value to the extent assertions of specific actual fact are made -- do not establish a potentially viable basis for equitable tolling. An evidentiary hearing therefore is not required. Holding an evidentiary hearing on the skeletal facts asserted would not offer a reasonable chance of altering the outcome, as the bare circumstances alleged by counsel did not constitute an extraordinary circumstance standing in the way of a timely filing. *Cf. Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir.2004)(no need for an evidentiary hearing where the facts alleged do not provide a basis for relief); *Tapia v. Roe*, 189 F.3d 1052, 1056 (9th Cir.1999)(similar).[9]

---

[8] See #43, at 9-16 & nn. 7 & 8.

[9] The citations relied upon by petitioner as requiring an evidentiary hearing here are inapposite.

(continued...)

-5-

The first factor relied upon by petitioner – his *pro se* status other than on the state post-conviction appeal – does not constitute an extraordinary circumstance providing a basis for equitable tolling under controlling Ninth Circuit law. *See, e.g., Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006)(a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling). The *pro se* status of a habeas petitioner instead is an ordinary circumstance; and there is no independent freestanding right to assistance by counsel or otherwise in pursuing federal habeas relief. Inmates must timely and diligently seek federal habeas relief while proceeding *pro se*; and if they fail to do so, the fact that they were proceeding without counsel does not establish a viable basis for equitable tolling.

The next factor – alleged limited English-language ability – is reflected in the record in only the barest of terms.

Petitioner stated in the original *pro se* petition that "he is a Native born Mexican that is a legal resident of the United States with limited understanding of English," and that "this petition has been prepared by another prisoner." However, the final page of the petition reflects that it was written by Felix himself. Petitioner additionally included two letters from an attorney in 2006 written to him entirely in Spanish.[10] Petitioner also wrote two letters to the Court in Spanish, which were stricken.[11]

/ / / /

---

[9](...continued)
 In *Holland*, *supra*, the Supreme Court – under well-settled practice – merely declined to consider the issue of extraordinary circumstances in the first instance and remanded for a determination of whether, *inter alia*, a evidentiary hearing should be ordered. 130 S.Ct. at 2565. Nothing in this unremarkable action of remanding for consideration of an issue not addressed below speaks to whether an evidentiary hearing in fact was required in *that* case, much less this one.

 In *Brown v. Roe*, 279 F.3d 742 (9th Cir. 2002), the Ninth Circuit held that the district court abused its discretion in declining to consider an equitable tolling issue raised for the first time by the *pro se*, illiterate petitioner *in federal court* in objections to a magistrate's report and recommendation. Just as in *Holland*, the remand order did not speak to *what* record development, if any, would be required on the claim, as it had not been considered below. Here, in marked contrast, petitioner is represented by counsel in opposing the motion to dismiss. Here, the *represented* petitioner failed to present specific facts that would warrant an evidentiary hearing. As the Court discusses at length in the text, *infra*, the bare facts proffered by the represented petitioner do not establish a basis for equitable tolling. For example, positing merely that the petitioner is a non-English speaker does not present a viable basis for equitable tolling as to that factor.

[10] #1-2, at electronic docketing page 8-10 & 14. He claims detrimental reliance, however, on a letter in English.

[11] ## 8-10.

1  When the Court appointed federal habeas counsel, it did so expressly out of an abundance of
2 caution. The Court further stated: "Nothing in this order constitutes an express or implied holding as
3 to petitioner's actual ability to communicate effectively in English."[12]
4  Now, after a motion to dismiss for untimeliness and petitioner's represented response, the
5 foregoing "showing" essentially is where the record stands as to petitioner's English-language skills.
6 Petitioner has tendered no competent evidence qualitatively establishing the extent to which he can or
7 cannot read and write in English. There is no evidence qualitatively establishing the level of his
8 English-language skills during the 314 otherwise untolled days that elapsed between March 13, 2006,
9 and January 21, 2007. Nor is there any evidence qualitatively establishing the level of his English-
10 language skills during the 169 days that elapsed following the March 3, 2009, issuance of the remittitur
11 to the August 20, 2009, mailing of the federal petition. The level of English-language proficiency in
12 an earlier period does not necessarily reflect that petitioner's proficiency was subject to the same level
13 of *arguendo* limitation in a later period, in this instance two to three years later. Nor does the use of
14 an interpreter in earlier state criminal proceedings categorically and automatically establish that a
15 petitioner lacks sufficient English language skills to later prepare and file a habeas petition.
16  Even further to the point, merely showing that a petitioner *arguendo* had *no* English language
17 skills and that there were no Spanish-language legal texts of substance in the prison law library does
18 not carry a petitioner's burden of proof on equitable tolling under controlling Ninth Circuit law. Rather,
19 under *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006), "a non-English-speaking petitioner seeking
20 equitable tolling must, *at a minimum*, demonstrate that during the running of the AEDPA time
21 limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language
22 *or translation assistance* from *an inmate*, library personnel, *or other source*." 449 F.3d at 1170
23 (emphasis added).
24  Here, Felix clearly has failed to tender evidence clearing the minimum threshold required by the
25 Ninth Circuit's *Mendoza* decision. Even if the Court were to assume, *arguendo*, that Felix had
26 absolutely no English-language skills whatsoever at any point during the two relevant time periods, he

---

[12] #13.

1 clearly was able to obtain sufficient translation assistance from another inmate to file a petition
2 challenging his conviction within the federal time limitation. He constructively filed a state petition
3 allegedly with another inmate's assistance on January 21, 2007, prior to the expiration of the federal
4 limitation period. Federal habeas counsel asserts broadly that Felix was "isolated from other inmates"
5 who could assist him, but that bald, generalized and unsupported assertion clearly is directly belied by
6 the record, which instead demonstrates that Felix was able to file pleadings, allegedly with assistance,
7 within the federal limitation period. Petitioner has not tendered an iota of competent evidence tending
8 to establish that he was not able to do what he did on January 21, 2007, at any point either between
9 March 13, 2006, and that date or between March 3, 2009, and the expiration of the federal limitation
10 period on April 23, 2009.

11 In this same vein, the Court would note that petitioner's approach to the underlying equitable
12 tolling analysis is flawed. In this case, as in other cases, petitioner's counsel seeks to identify discrete
13 periods, claim a basis for tolling for that period, and then tally up tolled and untolled days. That – at
14 a fundamental level -- is not how the equitable tolling analysis operates. Petitioner instead, under
15 established controlling law, must establish a *causal connection* between the alleged extraordinary
16 circumstances relied upon and the failure to file timely. *E.g., Spistyn, supra*. To highlight the point,
17 if a petitioner were barred from filing papers while in lockdown for fifteen days at the beginning of the
18 limitation period, that would not result in there being fifteen tolled days counted that functionally
19 extended the limitation period for fifteen days. Rather, such a circumstance, in and of itself, would have
20 no determinative bearing on the equitable tolling analysis unless it occurred at the *end* of the limitation
21 period and *caused* the petitioner to miss the filing deadline. *See, e.g., Harper v. Ercole*, 648 F.3d 132,
22 137-38 (2d Cir. 2011).[13]

23 In the present case, petitioner's bald, generalized, and essentially homogenous allegations that
24 he was unable to timely file a federal petition because he lacked English language skills are directly

---

[13] *See also Allen v. Lewis*, 255 F.3d 798, 800-01 (9th Cir. 2001), *on en banc rehearing*, 295 F.3d 1046 (9th Cir., 2002). The panel opinion in *Allen* was not adopted on *en banc* rehearing, and it thus has no binding precedential value. The *en banc* court reached a different disposition for different reasons that did not undercut the point discussed in the text. The panel opinion nonetheless does not constitute binding precedent.

belied by the undisputed fact that he was able to file a state petition within the limitation period. Felix has not tendered any specific facts that would tend to demonstrate that an absence of *arguendo* necessary translation assistance caused his failure to timely file also a federal petition before April 23, 2009. He tenders no evidence that he lacked similar translation assistance prior to the expiration of the federal limitation period, which, "at a minimum," is what he must show under *Mendoza*.

The next factor – alleged limitations on access to legal resources – does not provide a basis for equitable tolling on the record and allegations presented. Ely State Prison ("Ely"), which is a maximum security prison, uses a paging system for many inmates to access to legal resources. Under the paging system, inmates must request legal materials through "kites," *i.e.*, through the prison messaging system; and inmates in most units do not have access to an inmate law clerk other than indirectly through such kites. Petitioner relies upon this Court's prior decisions in *Koerschner v. Warden*, 508 F.Supp.2d 849 (D. Nev. 2007), and *John Tole Moxley v. Neven*, No. 2:07-cv-01123-RLH-GWF, #25 (D. Nev., Sept. 30, 2008), as establishing that the paging system was constitutionally inadequate.

As the Court touches on further *infra* with regard to delayed accrual under § 2244(d)(1)(B), petitioner's reliance upon *Koerschner* and *Moxley* is misplaced on the sparse record and allegations presented in *this* case. In both cases, the Court of course was making discretionary appointments of federal habeas counsel under 18 U.S.C. § 3006A, not making a definitive constitutional holding. More to the point, both cases discussed the level of adequacy of the paging system in place at a particular institution at a particular period of time based upon a record specific to that time and place. *Koerschner* discussed the level of adequacy of the paging system in place as to the protective segregation unit in Lovelock Correctional Center ("Lovelock"), with the last related record submission being filed on July 31, 2007. *Moxley* discussed the system in place at Ely as of approximately July 2008. Significantly, then-Chief Judge Hunt noted in *Moxley* that: (a) the paging system then practiced at Ely included several improvements over features of the Lovelock paging system that had concerned the Court in *Koerschner*; and (b) that the final institutional procedure for the Ely paging system still was undergoing review and thus then was a work in progress. He accordingly reserved judgment as to the constitutional adequacy of either the system then in place or the system to be later finally adopted, appointing counsel out of an abundance of caution.

The record presented in *Koerschner* of course does not speak to the specifics of the paging system in place at Ely during the time periods relevant to this case, and *Moxley* establishes that correctional officials had made a number of improvements over the earlier Lovelock procedure at Ely. The first period of time relevant to this case, between March 13, 2006, and January 21, 2007, does overlap the period considered in *Moxley*. However, this Court made no definitive holding in *Moxley* as to constitutionality and specifically reserved the question of whether the improvements at Ely resolved the concerns voiced in *Koerschner* as to the system earlier in use at Lovelock. The record in *Moxley* clearly does not speak to the later period of time involved in this case, between March 3, 2009, and the expiration of the federal limitation period on April 23, 2009.

In the present case, petitioner essentially merely cites to *Koerschner* and *Moxley*, outlines the general features of a paging system, and attaches only a policy document reflecting a policy dating back to *1998* establishing that law clerks do not go to the segregation units at Ely. This proffer is inadequate to establish an extraordinary circumstance standing in the way of a timely filing.

Petitioner, again, has the burden of establishing a causal connection between the alleged extraordinary circumstance and his untimely filing. *Spitsyn, supra*.

Nothing about petitioner's sparse, homogenous proffer establishes that the actual specifics of the Ely paging system in place between March 13, 2006, and January 21, 2007, and two years later between March 3, 2009, and April 23, 2009, caused his untimely filing. Much of the apparent cut-and-paste briefing from prior cases regarding other time periods ignores improvements in the Ely paging system that in truth improved access to legal resources. For example, counsel repeats, with no record support, an assertion made in prior cases, that "[f]requently popular cases or statutes were torn out of books and copies of same would have to be ordered from the Nevada Supreme Court."[14] However, the record in *Moxley* reflects that Ely at that time was in transition to a system in which copies of cases printed from a CD-ROM rather than hard copy books instead were distributed to inmates.[15] Thus, under the improved paging system, inmates not only no longer faced the prospect of cases being torn out of

---

[14] #43, at 6-7.

[15] See *Moxley, supra*, #25, at 1 n.1 & 5-6.

hardbound reporters, multiple inmates could access the very same case at the very same time. That could not be done previously with a single reporter volume even with physical access to the law library. Nothing in petitioner's cut-and-pasted briefing from prior cases reflects what the circumstances were in this regard at Ely during the full time periods relevant *to this case*, much less a causal connection to the lateness of his filing.

Use of any paging system of any description whatsoever, in and of itself, does not categorically violate the Constitution and/or provide a basis for equitable tolling.

Indeed, the minority in *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), expressly conceded, in arguing for a remand rather than reversal of the district court's extensive injunction order, that "it is unlikely that a proper application of *Turner* [*v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)], would have justified its decision to order the State to grant lockdown prisoners physical access to the stacks, given the significance of the State's safety interest in maintaining the lockdown system and the existence of an alternative, an improved paging system, acceptable to the respondents." 518 U.S. at 398, 116 S.Ct. at 2203 (Souter, J., concurring in part, dissenting in part, and concurring in the judgment)(referring to the habeas petitioners by their role as respondents on *certiorari* review). Given the overall tenor of the majority opinion in *Lewis v. Casey*, which sharply criticized federal court micro-management of prison operations in regard to the manner of providing legal resources, and the above express concession by the minority justices, the mere fact that a prison uses a paging system does not provide a petitioner with a lay down hand as to either unconstitutionality or equitable tolling.

Prior to both *Lewis v. Casey* and *Turner v. Safley*, the Ninth Circuit rejected the use of a paging system in reviewing an extensive district court order, one directing the specifics of prison operations down to, *inter alia*, the valves to be used in shower facilities. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1108-11 (9th Cir. 1986). The paging system considered in *Toussaint* limited inmates to five books per week. In *Koerschner*, Judge Reed observed that facets of the Lovelock paging system in place at that time were more restrictive than the paging system rejected in prior cases. *See* 508 F.Supp.2d at 859-60. By the time of then-Chief Judge Hunt's review of the Ely paging system in *Moxley*, however, at least some of the restrictive features of the Lovelock paging system had been substantially improved

-11-

upon at Ely, with further changes then being under consideration. While *Toussaint* has not been explicitly overturned, what remains viable of the extensive, intrusive federal judicial oversight of the specifics of prison operations reflected in that decision after the watershed decisions in *Lewis v. Casey* and *Turner v. Safley* is subject to some question. In all events, mere citation to *Toussaint*, *Koerschner*, and *Moxley* does not establish that any paging system under any circumstances is unconstitutional.

In this vein, there is no freestanding right to active legal assistance, by inmate law clerks or otherwise. In *Lewis v. Casey*, the Court expressly disavowed its prior statements in *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), suggesting that the States must enable inmates "*to litigate effectively* once in court." 518 U.S. at 354, 116 S.Ct. at 2181 (emphasis in original). The Court stated that "to demand the conferral of such sophisticated legal capabilities upon a mostly uneducated and indeed largely illiterate prison population is effectively to demand permanent provision of counsel, which we do not believe the Constitution requires." *Id.*

What the Constitution does require is that prisons provide access to the *courts* through adequate law libraries *or* adequate legal assistance. *E.g., Lewis v. Casey*, 518 U.S. at 346, 116 S.Ct. at 2177. This Court was concerned in *Koerschner* and *Moxley* with the adequacy of the active legal assistance that was available because it had concerns as to the adequacy of the law library alternative available in those cases via the paging system then in place. *Cf. Koerschner*, 508 F.Supp.2d at 861 ("The Lovelock procedures quite arguably provide the appearance of both but the substance of neither."). However, the provision of an adequate law library resource via a paging system would eliminate the disjunctive alternative requirement of instead providing the typical inmate with adequate active legal assistance by, *e.g.,* an inmate law clerk. Indeed, States arguably can honor their obligation to facilitate inmates' right of access to the courts through a number of means, including potentially by providing forms with instructions in lieu of an extensively-stocked law library. *See Lewis v. Casey*, 518 U.S. at 351-54, 360-361& n.7, 116 S.Ct. at 2180-81, 2184-85 & n.7.

Merely showing that an inmate does not have direct access to an inmate law clerk therefore does not establish either unconstitutionality or a basis for equitable tolling. Accordingly, in *Mendoza, supra*, the Ninth Circuit did not hold that a non-English-speaking inmate is entitled to equitable tolling if he does not have direct access to the active legal assistance of a law clerk. Rather, the Ninth Circuit

instead held that a non-English-speaking inmate is entitled to equitable tolling if he cannot secure *translation* assistance, whether through an inmate law clerk, another inmate, or otherwise.

Further to the current point, Felix has not presented, by proffer or otherwise, specific facts as to what *he* requested through the paging system in place during the time periods applicable to *his case*, what he then was unable to obtain, and how that *arguendo* inability caused him to file his federal petition late. Prior to the expiration of the limitation period on April 23, 2009, Felix had filed a timely state petition proceeding *pro se* while subject to the same conditions. Prior to April 23, 2009, he had available his prior state court filings, the arguments of his retained counsel on the state post-conviction appeal, and a Section 2254 federal petition form. Petitioner's generalized, homogenous proffer[16] does not identify how the paging system in place at Ely in 2009 allowed him to mail a federal petition on August 20, 2009, but nonetheless stood in the way of his doing so instead prior to April 23, 2009. Petitioner has wholly failed to present specific facts ending to demonstrate a causal nexus. *Cf. Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1013-14 (9th Cir. 2009)(petitioner failed to carry his burden of proof of presenting specific facts demonstrating a causal nexus between his lack of continual, unrestricted access to the entirety of his legal materials and the failure to file a timely federal petition); *see also Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010)(following *Waldron-Ramsey*).

At bottom, as to this factor, petitioner proceeds on the premise that the mere use of a paging system for law library access and the absence of active assistance from an inmate law clerk entitles him to equitable tolling. The controlling law does not support such an unqualified premise. Nor do the sparse, skeletal facts alleged tend to establish a causal connection between the level of legal resources available during the time periods pertinent to *petitioner's* case and his late filing. Petitioner clearly filed

---

[16]The Court only assumes *arguendo* that a wholly unsupported proffer by counsel would suffice in this context. The Court generally expressly requires that a *pro se* petitioner responding to a *sua sponte* show cause inquiry as to timeliness present competent evidence of facts specific as to date and place supporting a claim of equitable tolling. Arguably, no less should be required of a petitioner represented by counsel responding to a motion to dismiss vis-à-vis raising a question sufficient for an evidentiary hearing. To a large extent, petitioner's counsel merely has cut-and-pasted argument from other cases – *e.g.*, regarding cases being torn from books – that would not necessarily even apply to all of the time period relevant to this case. If, for example, Felix never requested a case, or never received a hard copy book rather than a photocopy in response, or never received a hard copy volume with the requested case torn out, what happened in other cases in years past with regard to torn-out cases does not matter. Petitioner has the burden of proof on this issue, and he must present specific facts, not cut-and-paste boilerplate that ignores changing circumstances.

1  a timely state petition under the generalized circumstances alleged, and he has identified no factual
2  specifics regarding prison legal resources that would have prevented him from doing on or before April
3  23, 2009, what he instead later did on August 20, 2009.

4  As to the next factor – age and alleged limited formal education – petitioner points to prior cases
5  where this Court has found a basis for equitable tolling because a petitioner's mental illness and/or
6  cognitive impairments rendered him incapable of effectively navigating the paging system to obtain
7  legal resources without active assistance.[17] Petitioner urges that "[a]lthough Felix does not allege
8  mental health or other cognitive impairments as an equitable tolling factor, his age, his lack of formal
9  education, and lack of English-language skills may be analogized to the type of mental impairments
10 warranting tolling relief."[18]

11 The Court is not persuaded, either with regard to the applicable law or on the minimal factual
12 presentation made.

13 The opposition memorandum states that petitioner was born on May 9, 1982.[19] He thus was 23
14 to 24 years old during the period between March 13, 2006, and January 21, 2007. He was 26 years old
15 two years later between March 3, 2009, and April 23, 2009. Petitioner was a full grown adult. While
16 petitioner refers to his youth at the time of the offense and plea, the relevant time here is his age during
17 the time periods relevant to the *equitable tolling* analysis. If being in one's twenties served as part of
18 the predicate for equitable tolling, then the AEDPA one-year limitation period would be rendered
19 largely dead letter.

20 Petitioner provides scant factual specifics, much less specifics supported by competent evidence,
21 regarding his education. Counsel states that petitioner had only a partial ninth grade education from
22 Mexico, that he was functionally illiterate in English, and that he had only a limited understanding of

---

[17] *See Ralph Schneider v. McDaniel*, 3:06-cv-00449-KJD-RAM, #70 (Oct. 23, 2008)(petitioner's somatoform disorder and schizotypal personality disorder rendered him incapable of preparing and filing a timely federal habeas petition without active assistance by another inmate); *Mario Lopes-Benitez v.McDaniel*, 3:08-cv-00543-ECR-VPC, #63 (similar holding due to longstanding mental impairments substantially inhibiting petitioner's cognitive functioning, such that he was not capable of independently preparing and filing a federal petition without active assistance).

[18] #43, at 7 n.6.

[19] #43, at 16 n.8.

-14-

English. The only record support cited for these assertions is the state petition. There, Felix stated: "Petitioner is a Native born Mexican that is a legal resident of the United States with limited understanding of English."[20] This spare, self-serving assertion does not speak to what educational level petitioner attained and where. Nor does the phrase "limited understanding of English" establish functional illiteracy in either English or Spanish. Petitioner stated during his plea colloquy that he went "nine and a half" years in school, without specifying where he attended school, how he did when he was there, or why he did not continue school.[21]

Petitioner's limited presentation clearly does not present extraordinary circumstances remotely analogous to the serious mental health and cognitive impairments presented in the Court's prior cases. Under controlling Ninth Circuit law, the petitioners in such cases are required to demonstrate, *inter alia*, that the petitioner's mental condition rendered him either unable to rationally or factually to personally understand the need to timely file or unable to prepare a habeas petition and effectuate its filing. *E.g., Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) Petitioner's skeletal references to only having a "limited formal education" does not remotely approach such a circumstance. His alleged limited English language abilities were discussed, *infra*, and are addressed under the Ninth Circuit's *Mendoza* decision with regard to the availability of translation assistance.

Petitioner, again, is a grown man without any identified mental health issues or cognitive impairments. Under the governing Ninth Circuit law in *Bills* and *Mendoza*, he has not presented specific facts tending to establish a basis for equitable tolling based either on his education level or limitations on his English language skills. Felix clearly demonstrated an ability to marshal his available resources and file timely pleadings within the federal limitation period when he filed the state petition.

The Court thus comes to the last factor relied upon, the erroneous advice given by retained state post-conviction counsel that petitioner had until February 2, 2010, to file a federal petition. It is well-established law that erroneous advice by counsel as to the running of the federal limitation period does not constitute an extraordinary circumstance that provides a basis for equitable tolling. In *Lawrence*

---

[20] #43, at 13; #32, Ex. 101, at 5b.

[21] #32, Ex. 97, at 4-5.

*v. Florida*, 549 U.S. 327, 127 S.Ct. 1079, 166 L.Ed.2d 924 (2007), the Supreme Court expressly rejected the petitioner's contention that "his counsel's mistake in miscalculating the limitations period entitle[d] him to equitable tolling." 549 U.S. at 336, 127 S.Ct. at 1085. The Court unequivocally held: "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." 549 U.S. at 336-37, 127 S.Ct. at 1085. A long line of Ninth Circuit authority further clearly, uniformly and unequivocally holds that such garden variety attorney negligence in miscalculating the federal limitation period does not provide a basis for equitable tolling. *See, e.g., Randle v. Crawford,* 604 F.3d 1047, 1058 (9th Cir.2010); *Spitsyn*, 345 F.3d at 800; *Miranda*, 292 F.3d at 1066–68 & n. 4; *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir.2001).

Petitioner seeks to bypass this well-established and clear law by stating that counsel "affirmatively and knowingly misinformed and misled Felix into believing that he had until February 2, 2010, to file in federal court," that counsel "violated a basic duty to his client and created a sufficient obstacle to justify equitable tolling," and that counsel "gave clearly erroneous statement to Felix."[22] This embellished rhetoric, indisputably, does not take the present case out of the reach of the controlling Supreme Court and Ninth Circuit authorities. In *Miranda*, just as in this case, counsel sent the petitioner a letter affirmatively misstating the expiration of the limitation period and, just as in this case, the petitioner maintained that he relied on this misrepresentation. 292 F.3d at 1066. The rhetoric used by petitioner in this case also could be applied to the facts of *Miranda*. The holding of *Miranda* applies fully to the facts of this case. Erroneous advice to a petitioner as to the expiration of the federal limitation period – under established law – does not provide a basis for equitable tolling. This is settled law.[23]

---

[22] #43, at 15-16.

[23] There is not an iota of specific actual factual evidence either proffered or on file remotely supporting federal habeas counsel's bare supposition that retained state post-conviction counsel "knowingly" misinformed and misled Felix. Petitioner cites to the letter in question as supporting evidence, but the letter clearly does not reflect that counsel knew that the information that he was giving was incorrect, such that he knowingly misled Felix. There is no competent evidence tendered by a witness with personal knowledge that counsel knowingly misinformed Felix. Federal habeas
(continued...)

-16-

In sum, the circumstances relied upon by petitioner, whether singly or in combination, do not establish a basis for equitable tolling. Petitioner clearly demonstrated an ability to file a timely pleading when he timely sought state post-conviction relief, notwithstanding his alleged limited English language capabilities, degree of access to prison legal resources, and alleged limited education. Petitioner has not identified any specific actual facts tending to establish how any of the above factors, whether singly or together, stood in the way of a timely federal filing prior to April 23, 2009, and caused him instead to constructively file late on August 20, 2009.

Rather, petitioner affirmatively alleges that "Felix relied on counsel's averment that he had one year from the time the Nevada Supreme Court denied the state habeas petition before he had to file a petition in federal court."[24] Petitioner thus has argued his way clearly out of any possibility of an equitable tolling finding. Petitioner maintains that the cause of his untimely filing was his reliance on the erroneous advice by counsel. Such reliance upon erroneous advice, however, under well-established United States Supreme Court and Ninth Circuit law, indisputably does not provide a basis for equitable tolling.

Petitioner accordingly is not entitled to equitable tolling.

/ / / /

---

[23](...continued)
counsel – clearly – is not a competent witness with personal knowledge as to prior counsel's state of mind. Petitioner must present specific actual fact, not bald unsupported hyperbole, particularly when alleging essentially intentional misrepresentation.

Petitioner refers to sundry inadequacies of retained counsel during the state post-conviction appeal. See #43, at 2-3, 14-15, 16 n.8 & 22-23. This alleged "ineffective assistance" by retained state post-conviction counsel in presenting the state post-conviction appeal is wholly irrelevant to the equitable tolling issues.

Petitioner's reliance upon *Manning v. Foster*, 224 F.3d 1129 (9th Cir. 2000), is misplaced. The counsel in question in *Manning* was operating under a *conflict of interest*. Reliance upon *Manning* to argue that the counsel in Felix' case was acting in his own behalf rather than that of the client is, put mildly, highly unpersuasive.

Petitioner's citation to *Holland, supra*, similarly is unpersuasive. The facts in *Holland* are markedly different from those presented here. Counsel in this case erroneously advised petitioner regarding the expiration date of the federal limitation period. Under well-established law, such erroneous advice does not provide a basis for equitable tolling.

[24]#43, at 15, lines 6-7. See also *id.*, at 16, lines 20-21.

*Delayed Accrual Under § 2244(d)(1)(B)*

Section 2244(d)(1)(B) requires not merely a showing of a violation of the Constitution or laws of the United States but instead a showing of such a violation that creates an "impediment to *the filing of an application*." Under established Ninth Circuit law, a petitioner seeking to demonstrate delayed accrual on this basis must demonstrate that the alleged impediment "altogether prevented him from presenting his claims in *any* form, to *any* court." *Ramirez v. Yates*, 571 F.3d 993, 1000-1001 (9th Cir. 2009). *Ramirez*, like this case, involved, *inter alia*, alleged limitations on access to prison legal resources. Petitioner clearly has not demonstrated that the alleged limitations on prison legal resources altogether prevented him from presenting his claims in *any* forum to *any* court because he successfully filed a state post-conviction petition. Petitioner has not identified any circumstance that kept him from filing a federal petition at any time. The Court further would note that petitioner's bare presentation in any event has not demonstrated the presence of a First Amendment violation in the first instance, as discussed *supra* as to equitable tolling.

Petitioner accordingly is not entitled to delayed accrual under § 2244(d)(1)(B).

IT THEREFORE IS ORDERED that the respondents' motion (#39) to dismiss is GRANTED and that the petition, as amended, shall be DISMISSED with prejudice as time-barred.

IT FURTHER IS ORDERED that a certificate of appealability is DENIED. Jurists of reason would not find it debatable whether the district court was correct in its dismissal of the petition as time-barred. Petitioner did not tender any competent evidence of specific facts tending to establish a basis for equitable tolling. The unsupported proffer made by counsel in argument, even if same *arguendo* could be presented in lieu of actual evidence, did not present specific allegations of actual fact that would give rise to a basis for equitable tolling. On the record presented and bare allegations made, petitioner has not presented allegations of specific actual fact that would demonstrate a basis for equitable tolling due to *pro se* status, limited English-language ability, limitations on legal resources, age and limited education, and/or erroneous advice by counsel as to the expiration of the federal limitation period. Indeed, petitioner's argument instead establishes that he filed late because he relied on the erroneous advice of counsel, which is not a basis for equitable tolling under well-established law. Petitioner further has not demonstrated a basis for delayed accrual under § 2244(d)(1)(B) based upon

1  a constitutional impediment to filing, as his filing of a timely state petition demonstrates that he was
2  not prevented from filing pleadings in any court.  An evidentiary hearing is not warranted on the sparse
3  factual allegations tendered, particularly given the fact that petitioner filed a state petition within the
4  federal limitation period under the same conditions alleged and maintains that he relied upon the
5  erroneous advice of counsel in not filing before the expiration of the federal limitation period.

      The Clerk of Court shall enter final judgment accordingly, in favor of respondents and against petitioner, dismissing this action with prejudice.

      DATED this 29th day of February, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE